1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

CRISTIAN NAVARRETE, an individual,

No.

10

Plaintiff,

COMPLAINT FOR DAMAGES

11

v.

12

CITY OF KENT, a municipal corporation and,
KING COUNTY, a municipal corporation and,
JAMES SHERWOOD, and his marital
community and, JENNIFER PHILLIPS, and her
marital community.

**JURY TRIAL DEMAND**

13

14

15

Defendants.

16

17

18

19

20

21

22

23

24

25

26

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

## I. <u>NATURE OF THE CASE</u>

1.1.    This is a civil rights action brought under 42 U.S.C. § 1983 and state law for damages arising from the false arrest and malicious prosecution of Plaintiff Cristian Navarrete ("Plaintiff" or "Mr. Navarrete"). Defendant City of Kent ("Kent"), Defendant King County, James Sherwood ("Sherwood"), Detective from the Kent Police Department, and Jennifer Phillips ("Phillips"), Deputy Prosecutor from the King County Prosecuting Attorney's Office (collectively "Defendants") caused Mr. Navarrete to be arrested and charged without probable cause for a serious violent felony he did not commit and had no involvement with whatsoever. In the search warrant application and probable cause certification, Defendant Sherwood and Defendant Phillips made false statements and omissions of exculpatory truths that subjected Mr. Navarrete to criminal charges he did not commit. As a result, Mr. Navarrete – an eighteen-year-old, Hispanic adolescent with no criminal history – languished in an adult jail during a pandemic for 141 days. In that time, he suffered severe and long-lasting damage to his reputation, his relationships with his family, and his emotional wellbeing. He also endured the invasion of his privacy through unreasonable searches of his home and effects and incurred attorney's fees to defend against the false charge. All of Defendants' unlawful actions were motived by the fact that Mr. Navarrete is Hispanic – one of the only similarities he shared with the actual suspect.

## II. <u>PARTIES</u>

2.1.    Plaintiff Cristian Navarrete is a resident of King County, Washington.

2.2.    Defendant Kent is a municipal corporation organized under the laws of the State of Washington. The Kent Police Department is an agency of Defendant Kent.

2.3.    Defendant King County is a municipal corporation organized under the laws of the State of Washington. The King County Prosecuting Attorney's Office is an agency of Defendant King County.

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

2.4.    Defendant Sherwood was at all times relevant to this action a detective for the Kent City Police Department, acting within the scope of his employment as an agent of Defendant Kent and under color of state law.

2.5.    Defendant Phillips was at all times relevant to this action a Deputy Prosecuting Attorney for the King County Prosecuting Attorney's Office, acting within the scope of her employment as an agent of Defendant King County and under color of state law.

### III. JURISDICTION AND VENUE

3.1.    This Court has original jurisdiction over Plaintiff's claims brought under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331 and § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.2.    Venue is proper in the Western District of Washington at Seattle under 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to these claims occurred in King County, and at least one of the Defendants resides in this district.

3.3.    In compliance with RCW 4.96.020 and/or RCW 4.92.100, Plaintiff filed a tort claim with Defendant King County on May 9, 2022. Defendant King County denied the claim and took no further action. Over sixty days have now elapsed.

3.4.    In compliance with RCW 4.96.020 and/or RCW 4.92.100, Plaintiff filed a tort claim with Defendant Kent on May 2, 2022. No action has been taken on the claim in over sixty days.

### IV. FACTUAL ALLEGATIONS

4.1.    Shortly before 8:53 p.m. on July 14, 2020, a young male named James Cornell Anderson was shot by two suspects near the 800 block of Central Avenue North in Kent, Washington.

4.2.    Eyewitnesses and surveillance footage indicated that one suspect was a tall Hispanic male and the other suspect was a short Hispanic male with a darker skin complexion who went by the nickname "Wicked," which was often spelled "Wiked."

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.3.    The tall Hispanic suspect was later positively and correctly identified as Luis Cano. Mr. Cano is a young Hispanic male that is approximately five foot ten inches tall.

4.4.    The "short" suspect was at first incorrectly and falsely identified as Mr. Navarrete. Mr. Navarrete is young Hispanic male approximately the same height as Mr. Cano. Mr. Navarrete has a lighter skin complexion than Mr. Cano.

4.5.    None of the eyewitnesses who saw the two suspects on the day of the shooting identified Mr. Navarrete as one of the suspects.

4.6.    Mr. Navarrete's criminal defense investigator later correctly identified the short suspect as "Wicked."[1] Wicked is approximately five foot five inches tall or shorter, has a darker skin complexion than Mr. Cano, and is known to go by his nickname "Wicked."

4.7.    Mr. Cano and Wicked belonged to the same gang, called the King Underground Surenos ("K.U.S.").

4.8.    Defendants, however, falsely claimed that Mr. Navarrete was the short suspect despite clear evidence to the contrary. They then falsely arrested and maliciously prosecuted him in direct violation of his constitutional and statutory rights.

### INVESTIGATION

4.9.    A young female named Zamirah Cacho was with Mr. Anderson when he was shot.

4.10.    As they walked north on Central Avenue North from the Kent Transit Center, Ms. Cacho and Mr. Anderson were both approached by Mr. Cano and Wicked.

4.11.    Mr. Cano and Wicked asked Ms. Cacho and Mr. Anderson whether they knew what bus traveled north from their location.

4.12.    Mr. Cano and Wicked then both pulled out guns and one of them shot Mr. Anderson, hitting him through his left buttocks and his scrotum.

---

[1] For purposes of this complaint, the correctly identified suspect Wicked will be referred to by his nickname rather than his actual name.

**THE BLANKENSHIP LAW FIRM, PLLC**
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.13.    Mr. Anderson fell, got up, then ran north with Ms. Cacho.

4.14.    Mr. Cano and Wicked ran south away from Mr. Anderson and Ms. Cacho.

4.15.    Ms. Cacho called 911 not long afterwards.

4.16.    Several officers from the Kent Police Department ("KPD"), including Defendant Sherwood, a white male detective, and Detective John Crane, responded to scene after Ms. Cacho called 911. Defendant Sherwood became the Lead Investigator of the shooting.

4.17.    Defendant Sherwood interviewed Ms. Cacho. He learned that Ms. Cacho and Mr. Anderson previously met the two suspects, later determined to be Mr. Cano and Wicked, while riding a bus to the Kent Transit Center. Defendant Sherwood later learned that Ms. Cacho and Mr. Anderson were riding a bus to the Kent Transit Center with their friends, Charis Benson and Fowzia Said, when Mr. Cano and Wicked entered the bus. Defendant Sherwood continued to interview Ms. Cacho and interviewed Mr. Anderson, Ms. Benson, and Ms. Said over the next several days.

4.18.    On July 15, 2020, Detective Crane obtained surveillance footage showing two Hispanic males wearing black and blue walk behind buildings near the Kent Transit Center and walk towards Central Avenue North. That same day, Ms. Benson indicated to Defendant Sherwood that she got a Snap Chat username from one of the Hispanic males. She also indicated that the two suspects told her that they were "Surenos," shorthand for the K.U.S. gang.

4.19.    On July 16, 2020, Ms. Benson sent a screenshot of the Snapchat profile name and account name of the shorter Hispanic suspect to Officer Wilson. The Snapchat profile name was "El Prieto" and the account name was "yoshi3232." Officer Wilson forwarded this information to Defendant Sherwood.

4.20.    Ms. Benson also told Officer Wilson over the telephone that one of the Hispanic male suspects was taller and the other was shorter. Ms. Benson, Mr. Anderson, Ms. Cacho, Ms.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

Said, and the two Hispanic males all exited the bus at the Kent Transit Center and briefly spoke with each other. Ms. Cacho and Mr. Anderson walked north while Ms. Benson and Ms. Said then left the group to go to Ms. Said's house. The Hispanic males walked away.

4.21.    On July 17, 2020, Defendant Sherwood obtained and reviewed surveillance footage from the King County Metro ("KCM") buses that the eyewitnesses and the suspects rode on the day of the shooting.

4.22.    On the KCM surveillance footage, Defendant Sherwood saw the eyewitnesses interact with Hispanic male suspects. He heard Ms. Said and the other females mention that Mr. Cano and Wicked were "Surenos."

4.23.    The short suspect, later identified as Wicked, can also be heard in surveillance footage telling the female eyewitnesses that his name is "Wicked."

4.24.    Defendant Sherwood also observed from the surveillance footage that one of the Hispanic male suspects – later determined to be Wicked – was clearly shorter than the other. Mr. Cano wore a blue Adidas shirt and Wicked wore a black hat that had a distinct white icon. Both males wore blue bandanas over their face, but they eventually took them off during the bus ride. The video from the surveillance footage, however, is pixelated and lower quality, making it difficult to clearly see facial features.

4.25.    On July 20, 2020, Defendant Sherwood interviewed Ms. Said at her home. Ms. Said indicated that one of the Hispanic males later identified as Wicked was approximately five foot five inches to five foot six inches tall and the other Hispanic male later determined to be Mr. Cano was approximately five foot ten inches to six feet tall. Ms. Said also indicated that the Mr. Cano had a lighter complexion than Wicked.

4.26.    Defendant Sherwood authored search warrants for the Snapchat account name "yoshi3232," which were signed by the court. Defendant Sherwood eventually received data from Snapchat indicating that the account "yoshi3232" used the email address "yoshi3232@gmail.com" and was associated with the phone number "206-434-7259."

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.27.    Defendant Sherwood determined that the phone number "206-434-7259" belonged to Saul Mendoza who lived at 3612 Northeast 4th Street, Trailer 14, Renton, Washington 98056.

4.28.    The Snapchat data also contained geolocations, which Defendant Sherwood used to determine that the phone number "206-434-7259" had a close proximity to the scene of the shooting.

4.29.    Believing one of the young male suspects may live in Renton, Detective Crane emailed Renton High School Resource Officer Thaddeus Kerkhoff several still images from the surveillance footage showing the suspects. About ten minutes later, SRO Kerkhoff identified the tall male suspect as Mr. Cano. SRO Kerkhoff recognized him as a student at Renton High School.

4.30.    Both Mr. Cano and Mr. Navarrete were students at Renton High School. SRO Kerkhoff never identified the short suspect from the still images.

4.31.    Detective Crane told Defendant Sherwood about Mr. Cano. Defendant Sherwood discovered that Mr. Cano's registered address was 3612 Northeast 4th Street, Trailer 14, Renton, Washington ("Cano Residence"). This address was within the Renton Highland Manor mobile home park.

4.32.    Defendant Sherwood authored a search warrant for the Cano Residence, which the King County Superior Court authorized on September 4, 2020.

### THE ARREST OF MR. CANO AND INTERVIEW OF VANESSA CANO

4.33.     Around 5:30 a.m. on September 8, 2020, several officers, including the SWAT team, executed the search warrant on the Cano Residence.

4.34.    Many of Mr. Cano's family members were home when officers stormed their home and arrested Mr. Cano, including Mr. Cano's mom, dad, and young 14-year-old sister, Vanessa Cano (hereinafter "Vanessa").

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.35.    Defendant Sherwood arrived at the Cano Residence after Mr. Cano was already in custody.

4.36.    Defendant Sherwood interviewed Mr. Cano while still at his residence. Mr. Cano admitted that "yoshi3232" was his Snapchat account name.

4.37.    Defendant Sherwood, along with several other officers, searched the Cano residence for evidence. The officers found many pieces of incriminating evidence, including, but not limited to, the same blue Adidas shirt and blue bandana seen in the surveillance footage and several rounds of ammunition, including 22-caliber and 9mm-caliber bullets. Several 9mm casings and a 22-caliber bullet where found at the scene of the shooting.

4.38.    Defendant Sherwood and Detective Crane interviewed three of Mr. Cano's family members, including his mother, Maria Magana, his father, Saul Cano Mendoza, and his young sister, Vanessa.

4.39.    Defendant Sherwood and/or Detective Crane showed each of them still images of the two suspects from the surveillance footage they obtained from their investigation. It was clear from these images that there was a height difference between the suspects.

4.40.    Ms. Magana identified the tall suspect as her son but did not identify the short suspect. Mr. Cano Mendoza said the tall suspect looked like his son, but he was not positive. Mr. Cano Mendoza did not identify or say who the short suspect looked like.

4.41.    Vanessa said she was one hundred percent certain that the tall suspect was her brother. Defendant Sherwood and/or Detective Crane then repeatedly asked Vanessa if she recognized the short suspect. Vanessa told Defendant Sherwood and/or Detective Crane that she was not sure because the images were blurry.

4.42.    Before Defendant Sherwood and Detective Crane interviewed her, Vanessa hugged her brother as several officers pointed their guns at him and yelled that they were going to shoot him unless he came out. The officers pointed guns at Vanessa and her family, grabbed them, and forcibly removed them their home. Vanessa then saw the officers trash her family's

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

home, breaking many of her and her family's possessions. And when Vanessa was being questioned about the still images, she was by herself with Defendant Sherwood and Detective Crane.

4.43.    Based on these circumstances and Defendant Sherwood's and/or Detective Crane's repeated questions about the short suspect, she felt pressured to say someone's name even though the images were blurry.

4.44.    Mr. Navarrete lived in the same mobile home park as Mr. Cano. Mr. Navarrete also went to the same high school as Mr. Cano and they rode the same bus to school together.

4.45.    Vanessa knew that Mr. Navarrete and Mr. Cano were about the same height.

4.46.    After repeated questioning, Vanessa eventually told Defendant Sherwood and Detective Crane that "I'm not sure if it's Cristian."

4.47.    With even further questioning, Vanessa said, "Well, this looks like Cristian, that, the person I'm talking about, but . . . I can't say 'cause it's like blurry."

4.48.    This interview was recorded.

### INTERROGATION OF MR. CANO

4.49.    The same day Mr. Cano was arrested, Defendant Sherwood and Detective Crane interviewed him at the KPD.

4.50.    Mr. Cano identified himself as the tall suspect in the still images. When asked to identify the short suspect, he said that he did not know his name but that he goes by "Wicked."

4.51.    Mr. Cano also admitted to pulling a gun out when confronting Mr. Anderson and Ms. Cacho after getting off the bus. Mr. Cano, however, denied shooting Mr. Anderson. Mr. Cano said that "Wicked" shot Mr. Anderson.

4.52.    Neither Defendant Sherwood nor Detective Crane asked Mr. Cano whether Mr. Navarrete was "Wicked" or asked how tall "Wicked" was.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

## SECOND INTERVIEW OF VANESSA

4.53.    After hearing the name "Cristian" from Vanessa, Detective Crane emailed SRO Kerkhoff again asking him whether he knew Mr. Cano had any friends named "Christian." SRO Kerkhoff indicated that he knows of Mr. Navarrete and provided him with a school photograph. SRO Kerkhoff also gave Detective Crane Mr. Navarrete's address, which was 3612 Northeast 4th Street, Trailer 46, Renton, Washington.

4.54.    Detective Crane never asked SRO Kerkhoff whether Mr. Navarrete was in a gang or went by "Wicked."

4.55.    On September 29, 2020, Defendant Sherwood and Detective Crane interviewed 14-year-old Vanessa a second time at a Goodwill in Renton.

4.56.    They called Vanessa, telling her that they know she is at the Goodwill and they want to interview her. This scared Vanessa.

4.57.    Detective Sherwood and Detective Crane showed Vanessa the same blurry still images that they showed her when they first interviewed her after her brother's arrest when she could not positively identify the short suspect.

4.58.    Defendant Sherwood and Detective Crane also showed Mr. Navarrete's school photograph to Vanessa.

4.59.    Despite it being obvious, neither Defendant Sherwood nor Detective Crane told Vanessa that the short suspect (Wicked) was several inches shorter than her brother.

4.60.    Additionally, neither Defendant Sherwood nor Detective Crane asked Vanessa whether if she knew anyone who went by the name "Wicked."

4.61.    Detective Sherwood and Detective Crane asked Vanessa again to identify the short suspect in the blurry still images.

4.62.    Like the first interview, Vanessa felt pressured to identify the short suspect.

4.63.    They never showed Vanessa the surveillance footage that clearly showed the height difference between her brother and the short suspect (Wicked).

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.64.    Defendant Sherwood and Detective Crane interviewed Vanessa without her parents present.

4.65.    When Defendant Sherwood and Detective Crane interviewed Vanessa at Goodwill, Vanessa's brother – Mr. Cano – was still in police custody.

4.66.    During this second interview, Defendant Sherwood and Detective Crane claim that Vanessa confirmed the short suspect in the blurry images was Mr. Navarrete.

4.67.    There is no evidence that the second interview was recorded despite multiple legal requests for any such recording.

**THE SEARCH WARRANT APPLICATION AGAINST MR. NAVARRETE WAS BASED ON FALSE STATEMENTS AND OMISSIONS OF EXCULPATORY TRUTHS**

4.68.    On October 1, 2020, Defendant Sherwood drafted an Application for Search Warrant to search Mr. Navarrete's home for evidence and arrest Mr. Navarrete for the shooting of Mr. Anderson.

4.69.    Defendant Phillips helped Defendant Sherwood draft the search warrant application. She edited it, provided suggestions to key factual allegations contained within it (including those about Mr. Navarrete), and ultimately gave approval to Defendant Phillips to submit the application to the court. Defendant Phillips' actions, which included providing legal advice to Defendant Sherwood and effectively advising him as to how to make an arrest, were taken outside of the judicial phase of the criminal process.

4.70.    Defendant Sherwood submitted the search warrant application, which he signed under penalty of perjury, to the King County Superior Court.

4.71.    Together, Defendant Sherwood and Defendant Phillips made multiple false statements and omissions of exculpatory truths in the search warrant application to establish probable cause against Mr. Navarrete.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington 98104
(206) 343-2700

4.72.    These false statements and omissions of exculpatory truths were made knowingly and with reckless disregard for the truth and for Mr. Navarrete's constitutional and statutory rights.

4.73.    Defendant Sherwood and Defendant Phillips falsely omitted Mr. Navarrete's height – approximately five foot ten inches tall – from the search warrant application and misled the court to believe that he was the same height as the short suspect (Wicked).

4.74.    In the search warrant application, Defendant Sherwood and Defendant Phillips indicated that Mr. Cano was the taller suspect, and the other male suspect was short.

4.75.    Defendant Sherwood and Defendant Phillips also indicated that one of the female eyewitnesses described the tall suspect as between five foot ten inches and six feet tall and described the short suspect as between five foot five inches and five foot six inches tall.

4.76.    Defendant Sherwood and Defendant Phillips then indicated that Mr. Cano was the tall suspect and falsely indicated Mr. Navarrete was the short suspect, which is not possible since they are approximately the same height.

4.77.    Defendants knew Mr. Navarrete could not have been the shorter suspect.

4.78.    Defendant Sherwood and Defendant Phillips failed to indicate that Defendant Sherwood himself observed surveillance footage that showed Mr. Cano was nearly half a foot taller than the short suspect (Wicked).

4.79.    Defendant Sherwood and Defendant Phillips also failed to indicate that Defendant Sherwood knew about Mr. Navarrete's height after Defendant Sherwood "ran" his name. When law enforcement "runs" an individual name, they obtain information about that individual, including information maintained by the Department of Licensing, such as an individual's height. Defendant Phillips also has access to this same information. This is demonstrated by the fact that Mr. Navarrete's height is included within KPD's superform, which Defendant Sherwood and Defendant Phillips both knew about.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.80.    Defendant Sherwood and Defendant Phillips also falsely stated that Vanessa told Defendant Sherwood during the September 8, 2020, interview that the short suspect "looked like Cristian."

4.81.    Defendant Sherwood and Defendant Phillips misled the court by failing to state that Vanessa, as shown by the recording from the interview, told Defendant Sherwood that the still images were "blurry" and she did not know whether the short suspect was actually Mr. Navarrete.

4.82.    Instead, Defendants used Defendant Sherwood's unreliable second interview of Vanessa to hide Vanessa's failure to positively identify the short suspect.

4.83.    Defendant Sherwood and Defendant Phillips knew that a follow-up identification under these circumstances is not independently reliable and did not erase Vanessa's previous failure to make an identification.

4.84.    Despite knowing the second interview of Vanessa was not reliable, Defendants focused almost entirely on the second interview and only referenced the first interview by falsely stating that Vanessa said the short suspect "looked like Cristian."

4.85.    Notably, Defendant Sherwood and Detective Crane showed her the same exact blurry images as they did during Vanessa's first interview.

4.86.    Defendants' false statements and omissions of exculpatory truths about Vanessa identifying Mr. Navarrete was the only alleged evidence connecting Mr. Navarrete to Mr. Anderson's shooting.

4.87.    Notably, none of the eyewitnesses who saw the suspects identified Mr. Navarrete as one of the suspects.

4.88.    Based on these false statements and omissions of exculpatory truths, a judge granted the search warrant application against Mr. Navarrete.

4.89.    Probable cause did not exist against Mr. Navarrete without these false statements and omissions of exculpatory truths.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

# FALSE ARREST OF MR. NAVARRETE

4.90.    Early in the morning, on October 7, 2020, several officers, including the SWAT team and Defendant Sherwood, executed the search warrant at Mr. Navarrete's home ("Navarrete residence").

4.91.    Many officers stormed the Navarrete residence with their guns drawn while yelling at Mr. Navarrete and his family.

4.92.    The officers searched Mr. Navarrete's home, destroying many of his and his family's possessions in the process.

4.93.    Defendant Sherwood showed Mr. Navarrete's mother, Irma De Jesus, the blurry still images from the surveillance footage.

4.94.    Defendant Sherwood asked whether she recognized anyone in the images. Ms. De Jesus denied recognizing anyone.

4.95.    Defendant Sherwood and other officers repeatedly asked Mr. Navarrete to tell them whether there were any firearms in the house, but Mr. Navarrete repeatedly denied that they had any guns.

4.96.    Officers did not obtain any evidence from arresting Mr. Navarrete or raiding his home that connected him to the shooting of Mr. Anderson.

4.97.    Defendant Sherwood also observed Mr. Navarrete's height while interacting with him.

4.98.    Defendant Sherwood saw that Mr. Navarrete was about the same height as Mr. Cano, which was five foot ten inches tall, several inches taller than short suspect (Wicked).

4.99.    Defendant Sherwood also saw that Mr. Navarrete is much taller than five foot five inches tall.

4.100.   Defendant Sherwood nonetheless arrested Mr. Navarrete.

4.101.   Defendant Sherwood did not have lawful authority to arrest Mr. Navarrete. He did not have probable cause to arrest Mr. Navarrete and the search warrant application would

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

not have been granted but for Defendant Sherwood's and Defendant Phillips' false statements and omissions of exculpatory truths.

4.102.  The officers raided the Navarrete residence and arrested Mr. Navarrete in plain view of Mr. Navarrete's neighbors and members of the public.

4.103.  One of the only similarities between Mr. Navarrete and the actual suspect – Wicked – were that they are both Hispanic.

## PROBABLE CAUSE CERTIFICATION AGAINST MR. NAVARRETE BASED ON FALSE STATEMENTS AND OMMISSIONS OF EXCULPATORY TRUTHS

4.104.  On October 7, 2020, the same day Mr. Navarrete was arrested, Defendant Sherwood submitted a Certification for Determination of Probable Cause to the King County Superior Court.

4.105.  Much like the search warrant application, Defendant Phillips helped Defendant Sherwood draft his Certification for Determination of Probable Cause.

4.106.  Defendant Phillips edited the probable cause certificate, provided suggestions to key factual allegations contained within it (including those about Mr. Navarrete), and ultimately gave approval to Defendant Sherwood to submit it to the court. Defendant Phillips' actions, which included providing legal advice to Defendant Sherwood about drafting a certificate, were taken outside of the judicial phase of the criminal process.

4.107.  The probable cause certification was included as part of the 1st Amended Information filed against Mr. Navarrete.

4.108.  Defendant Sherwood submitted the probable cause certificate, which he signed under penalty of perjury, to support a charge of Assault in the First Degree against Mr. Navarrete.

4.109.  Assault in the First Degree is a serious violent offense under Washington's Sentencing Reform Act.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.110.  Much like the search warrant application, Defendant Sherwood and Defendant Phillips made multiple false statements and omissions of exculpatory truths in the probable cause certificate to maliciously and falsely charge Mr. Navarrete with a crime he did not commit.

4.111.  These false statements and omissions of exculpatory truths were made knowingly and with reckless disregard for the truth and for Mr. Navarrete's constitutional and statutory rights.

4.112.  In the probable cause certificate, Defendants continued to omit Mr. Navarrete's height and misled the court to believing Mr. Navarrete was the same height as the short suspect (Wicked).

4.113.  Defendants falsely indicated that Mr. Navarrete was the short suspect.

4.114.  Defendants failed to indicate that Mr. Navarrete and Mr. Cano were about the same height.

4.115.  Defendants failed to indicate that he observed surveillance footage that showed the tall suspect – Mr. Cano – was taller than the short suspect (Wicked).

4.116.  Defendant Sherwood also failed to indicate that Mr. Navarrete was several inches taller than the short suspect (Wicked).

4.117.  Defendants knew about Mr. Navarrete's height after Defendant Sherwood ran Mr. Navarrete's name.

4.118.  Defendant Sherwood also knew Mr. Cano's and Mr. Navarrete's height because he met them in person.

4.119.  The omission of Mr. Navarrete's height was an omission of an exculpatory truth used to imply that Mr. Navarrete that was the short suspect.

4.120.  Defendants also misled the court by falsely stating that Vanessa told Defendant Sherwood during the September 8, 2020 interview that the short suspect "looked like Cristian"

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.121.  Defendants misled the court by failing to state that Vanessa repeatedly told Defendant Sherwood that the still images were blurry and she did not know whether the short suspect was actually Mr. Navarrete.

4.122.  Instead, Defendants used Defendant Sherwood's unreliable second interview of Vanessa to hide Vanessa's failure to positively identify the short suspect.

4.123.  Defendant Sherwood and Defendant Phillips knew or should have known that a follow-up identification under these circumstances is not independently reliable and did not erase Vanessa's previous failure to make an identification.

4.124.  Despite knowing the second interview of Vanessa was not reliable, Defendants focused almost entirely on the second interview and only referenced the first interview by falsely stating that Vanessa said the short suspect "looked like Cristian."

4.125.  Defendant Sherwood failed to state that Vanessa told him that the still images were blurry and she did not know whether the short suspect was actually Mr. Navarrete even though Defendant Sherwood and Detective Crane showed her the same exact blurry images as they did during Vanessa's first interview.

4.126.  Defendants also falsely stated that when Defendant Sherwood asked Mr. Navarrete about the gun, Mr. Navarrete alluded to the possibility that someone else had it but would not say who.

4.127.  Mr. Navarrete did not allude to anyone else having a gun. Mr. Navarrete honestly denied that there were any guns in his home.

4.128.  Defendant Sherwood's false statements about Vanessa identifying Mr. Navarrete and Mr. Navarrete alluding to someone else having the gun were the only alleged evidence connecting Mr. Navarrete to Mr. Anderson's shooting in any way whatsoever.

4.129.  Defendant Sherwood's omission of Mr. Navarrete's height, however, was direct evidence showing that he was not the short suspect involved in the shooting of Mr. Anderson.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.130.  Based on these false statements and omissions of exculpatory truths, a judge found probable cause against Mr. Navarrete for Assault in the First Degree.

4.131.  But for these false statements and omission of exculpatory truths, the judge would not have found probable cause for this serious violent felony.

4.132.  Based on the violent nature of the offense, the King County Superior Court also found that Mr. Navarrete was likely to commit a violent offense if released and imposed $250,000 bail against him after reviewing the probable cause certificate.

4.133.  But for the false statements and omissions of exculpatory truths contained within the probable cause certificate, Mr. Navarrete would not have been charged with this serious violent felony and held in an adult jail for more than 141 days at just eighteen years old.

### SHORT SUSPECT – WICKED – IDENTIFIED

4.134.  Mr. Navarrete, by and through his family, hired counsel and an investigator to represent him against the charge he did not commit.

4.135.  Despite repeated requests, Mr. Navarrete's counsel did not receive surveillance footage or the recording from Vanessa's interview until over two months after the charge was filed against Mr. Navarrete.

4.136.  Mr. Navarrete's investigator, Julie Gonzalez, reviewed the surveillance footage given to defense counsel in this case and interviewed witnesses who knew Mr. Cano and/or Mr. Navarrete.

4.137.  Witnesses indicated that Mr. Navarrete was not involved in the shooting of Mr. Anderson.

4.138.  Eventually, through her investigation, Investigator Gonzalez found and identified Wicked as an individual who looked strikingly similar to the short suspect in the surveillance footage and matched the height and descriptions provided by the eyewitnesses who saw the suspects the night of the shooting. Investigator Gonzalez estimated that Wicked

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

was just under five foot five inches tall, several inches shorter than Mr. Navarrete and Mr. Cano. Wicked also appeared to have a darker complexion than both Mr. Navarrete and Mr. Cano.

4.139.  Investigator Gonzalez found Wicked at his residence, which was only 2.2 miles from the Kent Transit Center.

4.140.  Investigator Gonzalez also obtained an Instagram photograph of several young Hispanic males flashing gang signs and displaying a firearm. Witnesses identified one of the Hispanic males as Wicked. In the photograph, he appears to be wearing the same hat that he wore in the bus surveillance footage. Moreover, Investigator Gonzalez learned from witnesses that Wicked went by "Wicked" and was a known member of the K.U.S. gang.

4.141.  A brief summary of Investigator Gonzalez' investigation was provided to the King County Prosecuting Attorney's Office, who sent an email to the King County Sheriff's Office ("KCSO") to confirm aspects of Investigator Gonzalez' investigation. KCSO Detective Joe Gagliardi and KCSO Deputy D. DesJardin confirmed that Wicked is known as "Wicked," which was often spelled "Wiked," and that he is a member of K.U.S. gang. Deputy DesJardin also indicated that Wicked has been in involved in criminal activity in Renton and Kent.

## DEFENDANTS' ACTIONS

4.142.  The King County Prosecuting Attorney's Office dismissed the case against Mr. Navarrete after receiving confirmation from Detective Gagliardi and Deputy DesJardin.

4.143.  Defendant Sherwood and Defendant Phillips instituted the prosecution of Mr. Navarrete through false statements and omissions of exculpatory truths in the search warrant application and probable cause certificate.

4.144.  Defendant Sherwood's and Defendant Phillips' false and omissions of exculpatory truths were deliberately fabricated to subject Mr. Navarrete to a criminal charge for a serious violent felony.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.145.  Defendant Sherwood and Defendant Phillips, however, did not have probable cause to believe that Mr. Navarrete committed the crime for which he was charged.

4.146.  Defendant Sherwood and Defendant Phillips instituted and continued the charge against Mr. Navarrete with malice, including animosity and vindictiveness toward Mr. Navarrete and reckless disregard for Mr. Navarrete's constitutional and statutory rights, as evidenced by their repeated false statements and omissions of exculpatory truths, withholding of exculpatory evidence, and complete disregard of the known fact that Mr. Navarrete was about the same height as Mr. Cano (around five foot ten inches), who was several inches taller than the short suspect (around five foot five inches). Defendant Sherwood and Defendant Phillips knew or should have known that he was innocent.

4.147.  As indicated by Defendant Sherwood's interview of Vanessa, a 14-year-old girl who moments earlier had guns pointed at her and her family and watched her home get raided and destroyed, Defendant Sherwood also used investigative techniques that were so coercive that he knew or should have known that those techniques would yield false information.

4.148.  Defendants' actions as alleged herein were motived by the fact that Mr. Navarrete is Hispanic – one of the only similarities he shared with the actual suspect (Wicked).

4.149.  Defendants' actions caused substantial harm to Mr. Navarrete, an eighteen-year-old adolescent with no previous criminal history.

## MR. NAVARRETE'S INJURIES

4.150.  The Defendants' unlawful conduct caused Mr. Navarrete severe harm. In view of the entire neighborhood, the SWAT team pulled his entire family, including his parents and young brothers and sisters, out of their house at gun point and demanded that Mr. Navarrete tell them where "the" gun was located. The officers cuffed and dragged him to a police vehicle while his family's home was ransacked and many of their private possessions were destroyed. He then spent 141 days in adult jail for a crime he did not commit.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

4.151.  The Defendants' unlawful conduct caused him and his family to incur attorney's fees hiring private defense counsel. And even though the charge was eventually dismissed, he still must live with an arrest record for a serious violent offense.

4.152.  Altogether, Defendants' unlawful conduct has caused Mr. Navarrete severe and long-lasting damage to him, his reputation, his relationships with his family, and his financial and emotional wellbeing.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Federal Civil Rights Violations Under 42 U.S.C. § 1983)

5.1     By virtue of the facts described above, Defendants Sherwood and Phillips are liable for compensatory and punitive damages for deprivation of Plaintiff Cristian Navarrete's civil rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, including the unreasonable search and seizure of his home, and his arrest and pre-trial detention without probable cause.

5.2     By virtue of the facts described above, Defendants Sherwood and Phillips are liable for compensatory and punitive damages for deprivation of Plaintiff Cristian Navarrete's civil rights guaranteed by the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983 to be free from deprivations of liberty without due process of law.

5.3     Defendants Kent and King County are liable for these constitutional violations by virtue of its condonation and ratification of them and similar conduct by its officers and agents. It also should be held liable under principles of *respondeat superior*. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 432, 117 S. Ct. 1382 137 L. Ed. 2d 626 (1997) (Breyer, et al., dissenting).

### SECOND CAUSE OF ACTION

### (State Law Claim – Tort of Malicious Prosecution)

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

5.4    By virtue of the facts described above, Defendants Sherwood and Phillips are liable to Plaintiff Cristian Navarrete for the tort of malicious prosecution under RCW 4.24.350 and Washington common law.

5.5    By virtue of the facts described above, Defendants Kent and King County are liable to Plaintiff Cristian Navarrete for the tort of malicious prosecution committed by their agents while acting within the scope of their employment.

## THIRD CAUSE OF ACTION

### (State Law Claim – Tort of False Arrest)

5.6    By virtue of the facts described above, Defendants Sherwood and Phillips are liable to Plaintiff Cristian Navarrete for the tort of false arrest.

5.7    By virtue of the facts described above, Defendants Kent and King County are liable to Plaintiff Cristian Navarrete for the tort of false arrest committed by their agents while acting within the scope of their employment.

## VI. JURY DEMAND

6.1    Plaintiff Cristian Navarrete demands a trial by jury.

## VII. RESERVATION OF RIGHTS

7.1    Mr. Navarrete reserves the right to add, revise, or withdraw any claims or add additional parties during the course of the litigation as he obtains further information.

7.2    This Complaint does not include every legal theory that supports Plaintiff's claims and damages that may be presented at trial.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

8.1    All past and future pecuniary and non-pecuniary losses resulting from the unlawful practices complained of in the above paragraphs, including without limitation, emotional pain, suffering, humiliation, distress, and loss of enjoyment of life, in an amount to be determined at trial.

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700

8.2     Punitive damages from the individual defendants on Mr. Navarrete's claims

pursuant to 42 U.S.C. § 1983 and to the extent otherwise permitted by law;

8.3     All costs, including, but not limited to reasonable attorney's fees, and expert

fees, under 42 U.S.C. § 1988 and to the extent otherwise permitted by law;

8.4     All tax consequences associated with the damages and cost award, including but

not limited to attorney's fees;

8.5     Any pre-judgment and post-judgment interest;

8.6     The right to conform the pleadings to the evidence presented at trial;

8.7     Such other relief as may be just and equitable.


DATED this 7th day of October 2022.

THE BLANKENSHIP LAW FIRM, PLLC



By:   /s Scott C.G. Blankenship
By:   /s Tobin S. Klusty
       Scott C. G. Blankenship, WSBA No. 21431
       Tobin S. Klusty, WSBA No. 52567
       The Blankenship Law Firm, PLLC
       1000 Second Avenue, Suite 3250
       Seattle, WA 98104
       Telephone: (206) 343-2700
       Facsimile: (206) 343-2704
       Email:    sblankenship@blankenshiplawfirm.com
                 tklusty@blankenshiplawfirm.com
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES
Page 22

THE BLANKENSHIP LAW FIRM, PLLC
1000 Second Avenue, Suite 3250
Seattle, Washington  98104
(206) 343-2700